THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JUAN NÚÑEZ TOLEDO, Defendant and Appellant.

No. CR-65-16.        Decided September 27, 1965.

*Eduardo Cuchí Coll* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Manuel Tirado Viera, Assistant Solicitor General,* for The People.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Appellant was sentenced to serve 10 days in jail and his driver's license was suspended for a period of one year, after having been convicted of violating § 5-801 of the Vehicle and Traffic Law of 1960, 9 L.P.R.A. § 1041 (driving motor vehicles under the influence of intoxicating liquor). He assigns in this appeal the commission of several errors which actually involve a single question.

When he was detained for the violation charged against him, defendant consented to have a urine sample taken. The parties stipulated that the procedure provided by law for the taking, bottling, and analyzing of said sample was properly complied with.

The sample was divided into three portions and the chemical analysis of one of the portions introduced in evidence by the prosecuting attorney, revealed a content of seventeen hundredths of one per cent (.17%) by weight of alcohol. The analysis of the portion of the sample delivered to defendant, made by a chemist of his choice, revealed thirteen hundredths of one percent (.13%) by weight of alcohol. Because of the discrepancy in the result of both analyses the court ordered, at the request of the defense, that the third portion kept for that purpose be analyzed. This analysis revealed a content of two hundredths of one percent (.02) by weight of alcohol.[1]

The result of the chemical analysis of this third portion of the urine sample serves as ground for appellant's contentions.[2]

---

[1] Section 5-803, subdivision (f) of the Vehicle and Traffic Law, provides:

"(f) All blood smears or urine samples shall be divided into three portions: One shall be delivered to the person arrested so that he may have it analyzed by a chemist of his choice, if he so desires, and the other two shall be kept for the use of the Department of Health; one to be used in the chemical analysis required under this section, and the other to be kept for analysis only by direction of the court in case of discrepancy between the official analysis and the analysis privately made by order of the defendant." (9 L.P.R.A. § 1043, subdivision (f).)

[2] Appellant assigns the commission of the following errors:

"(a) The trial court erred in determining that defendant-appellant violated § 5-801 of the Traffic Law of Puerto Rico.

(b) The trial court erred in admitting evidence on the alleged state of intoxication of defendant, whereas the final urine analysis revealed a result of less than five hundredths of 1% by weight of alcohol.

(c) The trial court erred in punishing defendant to serve ten days in jail.

Known are the legal provisions[3] to the effect that the amount of alcohol in defendant's blood at the time the violation is committed as shown by the chemical analysis of defendant's blood, urine, or breath, shall give rise to the following presumptions: (a) that the defendant was not under the influence of intoxicating liquor if at the time of the analysis of defendant's blood there was five (5) hundredths of one (1) percent, or less by weight of alcohol; (b) that he was under the influence of intoxicating liquor at the time of the alleged violation if in the defendant's blood there was fifteen (15) hundredths of one (1) per cent, or more, by weight of alcohol, and (c) if in the defendant's blood there was more than five (5) hundredths of one (1) percent, but less than fifteen (15) hundredths of one (1) percent, by weight of alcohol, such fact shall not give rise to the presumption that the defendant was or was not under the influence of intoxicating liquor, but such evidence may be considered jointly with other competent evidence in determining the guilt or innocence of the defendant.

■ Now then, in the cases where the chemical analysis shows that in defendant's blood there is more than five (5) hundreths of one (1) percent, by weight of alcohol, the People may introduce any other competent evidence bearing upon the question of whether or not the defendant was under the influence of intoxicating liquor at the time of the alleged violation. (Subdivision 4(b) of § 5-801 of the Vehicle and Traffic Law.)[4] It is only when the content of alcohol in the defendant's blood is five hundredths of one percent (.05%)

---

(d) The trial court erred in determining that defendant, Juan Núñez Toledo, was driving a motor vehicle on a public highway of Puerto Rico under the influence of intoxicating liquor."

[3] Section 5-801 of the Vehicle and Traffic Law.

[4] In this case the People introduced, besides the chemical analysis, additional evidence, consisting in the testimony of the peace officer, Jorge Luis Soler, who stated that the defendant talked incoherently, smelled strongly of liquor and "staggered" when he walked.

or less, by weight, that it is presumed conclusively that said defendant was not under the influence of intoxicating liquor at the time of the alleged violation. *People* v. *Superior Court*, 84 P.R.R. 378, 386 (1962).

Appellant seems to rely on this presumption on the basis of the result of the analysis ordered by the Court at his request.

■ He would be right if the probatory force of the result of the verifying analysis would compel the trial judge to base his judgment thereon, and accordingly to ignore both the analysis presented by the Prosecuting Attorney, and the one presented by the defense, as well as the oral evidence. However, in view of the attendant circumstances the result of the verifying analysis cannot and should not be considered controlling in determining the innocence of the defendant in this case.

■ As to the great discrepancy between the results of the chemical analyses—the official one, and the one privately made by a chemist of defendant's choice—and the verifying analysis, Mrs. Haydeé Fernández, chemist of the Department of Health, stated that she personally made the official analysis (.17% by weight of alcohol) and nine months later the verifying one. She explained that most of the containers kept lose their content of alcohol, due to evaporation, at the rate of two hundredths of one percent (.02%) per month. She added that the minimum which the portion subject to verification could have lost could not be determined without calculating certain "pressure lines." Upon being examined by the defense she stated that the evaporation of alcohol is due to the fact that the containers do not come well sealed and that the cap of the one containing the test sample in the instant case was not fully twisted.

In view of the reasonable explanation given by the chemist of the Department of Health, the trial court did not err

in not considering the result of the verifying analysis sufficient to establish the ground for the presumption that the defendant was not under the influence of intoxicating liquor at the time of the violation charged against him.

The judgment appealed from will be affirmed.